# STATE OF FLORIDA v WRIGHT
## Case No. 90-12464/65CR
County Court, Brevard County
July 18, 1990

## APPEARANCES OF COUNSEL

Office of the State Attorney, for plaintiff.

**Daniel Ciener, Esquire,** for defendant.

## OPINION OF THE COURT

KERRY I. EVANDER, County Judge.

The Defendant, JACKIE WRIGHT, has filed a Motion to Suppress all statements made by Defendant to Trooper Cleveland Johnson subsequent to Trooper Johnson advising Defendant of his Miranda rights. Defendant's Motion is granted, in part, and denied in part, as more specifically set forth below.

### I. FACTUAL BACKGROUND

On April 14, 1990, after conducting an accident investigation for approximately 30 minutes, Trooper Johnson advised Defendant that he was commencing a criminal investigation and further advised Defendant of his Miranda rights. Defendant invoked his right to remain silent by responding "I will do that" after being advised of his right to remain silent.

After Defendant invoked his right to remain silent, Trooper Johnson did not ask the Defendant any questions concerning the accident, his whereabouts immediately before the accident or whether the Defendant had been drinking. The officer did request Defendant to perform certain standard "field sobriety" tests. The Defendant agreed to do so.[1] Defendant's performance of the field sobriety tests was videotaped by a "BAT Mobile Unit" which had arrived on the scene. After the completion of the field sobriety tests, Defendant was placed under arrest for DUI.

While performing the field sobriety tests, the Defendant made certain verbal statements which are the subject of the instant Motion to Suppress. The statements sought to be suppressed, which can all be heard on the audio portion of the video, are:

1. Defendant's attempted recitation of the alphabet;

2. Defendant's attempt to count backwards from 90 to 70;

3. Defendant's counting from 1 to 9 as part of the "walk and turn" test;

4. Defendant's counting from 1001 to 1030 as part of the "one-leg stand" test; and

5. Defendant's admissions that he had been drinking.

### II. CUSTODIAL INTERROGATION

The first issue which needs to be addressed is whether the Defendant

---

[1] The State did not, however, produce sufficient evidence to establish that Defendant knowingly and voluntarily waived his Miranda rights.

was subject to custodial interrogation, so as to entitle him to the benefit of the Miranda procedural safeguards. In *Berkemer v McCarty,* 468 U.S. 420 (1984), the United States Supreme Court found that although a *routine* traffic stop constituted a "seizure", Miranda warnings were not required. The Court found two features of an ordinary traffic stop which would "mitigate the danger that a person question [would] be induced to speak where he would not otherwise do so freely." *Id.* at 437. First, routine traffic stops are presumptively temporary and brief. Second, motorists should not "feel at the mercy of the policy" in that the routine stop is normally n public involving "only one or at most two policement." *Id.* at 437-438. The Court contrasted a routine traffic stop to the typical custodial interrogation which is frequently prolonged and in a "police-dominated" environment. *Id.* at 438. In *Berkemer,* the Court concluded that the Defendant was not subject to custodial interrogation:

> "where a single police officer asked [Defendant] a modest number of questions and asked him to perform a simple balancing test at a location visible to passing motorists." *Id.* at 442.

In *Berkemer,* the Court stressed that only a short period of time elapsed between the stop and arrest. Significantly, in footnote 34 of its opinion, the Court suggested that a different result would like be reached if the Defendant had been detained for over one-half hour prior to being questioned concerning the circumstances of an accident. *Id.* at 331.

In the present case, the field sobriety tests were performed, at roadside, prior to arrest. However, unlike *Berkemer,* the Defendant in the instant case made the statements in issue:

a. After being advised he was the subject of a criminal investigation;

b. After being advised of his Miranda rights, and invoking same;

c. After being subject to questioning done pursuant to Trooper Johnson's accident investigation;

d. At least one-half hour after the commencement of the accident investigation; and

e. On videotape, in the presence of the arresting officer and any officer(s) on duty with the BAT Mobile Unit that evening.

Thus, the Defendant made the statements in question, after rather lengthy detention, in a "police-dominated" environment. Pursuant to *Berkemer,* this Court finds, for purposes of Miranda, the Defendant's statements were made during custodial interrogation.

## III. ALPHABET AND COUNTING BACKWARD TESTS

The second issue presented by Defendant's Motion to Suppress is whether Defendant's attempt to recite the alphabet and Defendant's attempt to count backwards are testimonial in nature, thereby invoking the protections of the Fifth Amendment. In *Pennsylvania v Muniz,* 58 U.S.L.W. 4817 (U.S. June 19, 1990) the United States Supreme Court found that a Defendant's response to the question of whether he remembered the date of his sixth birthday was testimonial in nature where the Defendant stated he couldn't remember the date. The Court reasoned that the *content* of Defendant's response was incriminating in that it could be inferred that Defendant was too impaired to calculate the date of his sixth birthday.

> "Hence, the incriminating inference of impaired mental faculties stemmed, not just from the fact that Muniz slurred his response, but also from a testimonial aspect," *Id.* at 4822.

The Court further stated that its conclusion was in accord with those State Courts "which have reasoned that standard sobriety tests measuring reflexed, dexterity, and balance do not require the performance of testimonial acts." *Id.* at 4823, n.16.

In his dissent on this issue, Justice Rehnquist stated that the sixth birthday question was simply an effort to determine if the Defendant was "able to do a simple mathematical exercise." *Id.* at 4824. Accordingly, he argued, the Defendant's response was not testimonial and, therefore, admissible.

In the present case, the audio portion of the videotape depicts Defendant's failure to state the letters of the alphabet and Defendant's failure to count backwards in proper sequential order. Following the *Muniz* rationale, this Court feels compelled to find that Defendant's attempted recitation of the alphabet and Defendant's attempt to count backwards are testimonial in nature. Clearly, the *content* of Defendant's statements is incriminating and thus the inference of impaired mental faculties stamps not only from Defendant's slurred delivery, but also from the testimonial aspect of that response. Accordingly, Defendant's Motion to Suppress is granted to the extent that the State may not present evidence as to the Defendant's failure to state the alphabet or count backwards in proper sequential order.[2]

---

[2] This Court would note, albeit in dicta, that a different result would be reached if the Defendant had not been under custodial interrogation. In *Berkemer,* a police officer asked the Defendant, during "non-custodial interrogation" if the Defendant had been drinking. The Defendant's affirmative response was held admissible since the protec-

## IV. COUNTING DURING THE WALK THE LINE AND ONE-LEG STAND TESTS

In *Muniz,* the Supreme Court fund that the Defendant's counting from 1 to 30 during the one-leg stand test "qualifies as a response to custodial interrogation." *Id.* at 4823, n.17. However, since the Defendant counted *accurately,* the COurt found that his verbal response was not incriminating except to the extent that Defendant exhibited a tendency to slur words. Defendant's slurring was deemed a non-testimonial component of his response, and therefore, suppression of the counting was not required.

In the present case, Defendant's counting on both the "one-leg stand" test and the "walk the line" test was also accurate. Accordingly, pursuant to *Muniz,* Defendant's Motion to Suppress such statements is denied.[3]

## V. ADMISSIONS TO DRINKING

In the present case, the Defendant stated on more than one occasion, "Yes, I've been drinking." However, none of such statements were made by Defendant in response to a question by Trooper Johnson. Rather, such statements were made voluntarily and spontaneously, and are thus clearly admissible. Defendant's Motion to Suppress these statements is also denied.

DONE AND ORDERED this 18th day of July, 1990.

---

tions afforded by the Miranda doctrine did not apply prior to custodial interrogation. If a police officer can testify as to a Defendant's affirmative response to a question as to whether he had been drinking, in a non-custodial setting, he should certainly be able to testify as to a Defendant's failure to count or recite the alphabet in proper sequential order.

[3] This Court recognizes the anomaly that, pursuant to this decision, the State can present the audio portion of the tape where the Defendant counts in correct sequential order but not where the Defendant counts in incorrect sequential order. However, this results seems to be mandated by *Muniz.*